UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No: 16-37 (MJD)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | PLEA AGREEMENT AND |
| Plaintiff, ) | SENTENCING STIPULATIONS |
| ) | |
| v. ) | |
| ) | |
| ABDIRIZAK MOHAMED WARSAME, ) | |
| ) | |
| Defendant. ) | |

The United States of America and Abdirizak Mohamed Warsame (hereinafter referred to as "the defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

## PLEA AGREEMENT

1. **Charge**. The defendant agrees to plead guilty to Count One of the Information, which charges the defendant with conspiracy to provide material support and resources to ISIL (the Islamic State of Iraq and the Levant), a designated foreign terrorist organization, in violation of Title 18, United States Code, § 2339B. The government agrees to not prosecute the defendant for any additional offenses disclosed to the government by the defendant or known by the government as of the date of this agreement. However, all conduct known by the government can and will be used as relevant conduct under the Federal Sentencing Guidelines and as factors under 18 U.S.C. § 3553(a) at the defendant's sentencing.

SCANNING
FEB 1 2 2016
U.S. DISTRICT COURT MPLS

1

2. **Factual Basis and Stipulated Facts**. It is stipulated that Count One of the Information is true and that the defendant is guilty of that charge. The defendant agrees that the following facts are accurate and that the government has sufficient evidence to prove the following at trial:

Between on or about March 1, 2014, and June 1, 2014, the defendant became aware of a group of individuals in both the United States and outside the United States (hereinafter, "the co-conspirators") who had traveled or who desired to travel overseas to join ISIL, a designated foreign terrorist organization. Because defendant wished to travel to Syria to join and fight with ISIL himself, he joined this group of aspiring travelers. At all times relevant to this proceeding, the defendant was aware that ISIL was a designated foreign terrorist organization that engaged in terrorism and terrorist activity.

Throughout early 2014, the defendant participated in several meetings occurring in the District of Minnesota during which he and co-conspirators discussed traveling to Syria to join ISIL. The defendant and his co-conspirators discussed, among other things, the means of funding travel to Syria, and potential routes of travel from Minnesota to Syria that would best elude law enforcement. In April of 2014, the defendant applied for an expedited passport with the intent to use this document to travel overseas to join ISIL. In making his application for an expedited passport, the defendant made false statements to the passport agent about his true purpose for obtaining the document. Also in April of 2014, the defendant provided approximately $200 cash to co-conspirator Adnan Farah for Adnan Farah's fees for an expedited passport which the defendant knew would be used by Adnan Farah to travel to Syria to join ISIL.

In May of 2014, the defendant accepted the position of "emir", or leader, of the group of co-conspirators, in anticipation of assuming that role from co-conspirator Guled Ali Omar, who then had imminent plans to depart from the Twin Cities for Syria to join ISIL. On May 27, 2014, the defendant accompanied co-conspirators Abdullahi Yusuf and Abdi Nur as they made final preparations ahead of their attempts to travel overseas to join ISIL on May 28, 2014 and May 29, 2014, respectively.

In June of 2014, the defendant obtained a contact number for a then-current ISIL fighter, H.K., and then provided that information to a Minneapolis-based co-conspirator, Y.J., who had traveled from Minnesota to Turkey and was then attempting to join ISIL in Syria. The defendant provided this number to Y.J. for the specific purpose of aiding Y.J.'s efforts to join ISIL. Throughout 2014, the defendant continued to communicate by telephone, social media, and in-person with his co-conspirators who remained in Minnesota. In August of 2014, the defendant obtained his passport but did not thereafter attempt to travel outside of the United States.

In early April of 2015, the defendant participated in a series of gatherings with co-conspirators Abdirahman Daud, Mohamed Farah, Adnan Farah, and Guled Omar, each of whom were actively planning to travel from the Twin Cities to Syria to join ISIL. At one such meeting on April 2, 2015, the defendant repeatedly encouraged Guled Omar to travel overseas to join ISIL. At this time, the defendant himself was not actively planning to travel to Syria.

4. **Statutory Penalties**. The parties agree that Count One of the Information carries maximum statutory penalties of:

    a.    fifteen (15) years' imprisonment;

    b.    a supervised release term of life;

    c.    a criminal fine of $250,000; and

    d.    a mandatory special assessment of $100, which is payable to the Clerk of Court immediately after sentencing.

5.    **Revocation of Supervised Release**. The defendant understands that, if he were to violate any condition of supervised release, he could be sentenced to an additional term of imprisonment pursuant to 18 U.S.C. § 3583(e).

6.    **Guideline Sentencing Stipulations**. The defendant understands he will be sentenced in accordance with the Federal Sentencing Act, 18 U.S.C. § 3551, *et seq.*, with reference to the applicable United States Sentencing Guidelines ("U.S.S.G."). The parties believe that the Guidelines Manual incorporating amendments effective November 1, 2014, applies in this case. The parties agree that the following calculations regarding the Guidelines will ultimately be determined by the Court.

    a.    Base Offense Level.
           The parties agree that the applicable guideline section is section U.S.S.G. § 2M5.3(a), which provides a base offense level of 26.

    b.    Specific Offense Characteristics.
           The parties agree that the facts of this case support no specific offense characteristics.

    c.    Chapter 3 Adjustments.
           The parties agree that the 12-level adjustment described at U.S.S.G. § 3A1.4(a) applies.

    d.    Acceptance of Responsibility. If the defendant (1) provides full, complete and truthful disclosures to the United States Probation Office, including providing complete, accurate and truthful financial information; (2) complies with all conditions of release; (3) testifies truthfully during the change of plea and sentencing hearings; (4) complies with this Agreement; and (5) undertakes no act inconsistent with acceptance of responsibility before the time of sentencing, the

4

government agrees to recommend that the defendant receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and to move for an additional one-level reduction under U.S.S.G. § 3E1.1(b). Whether there will be a reduction for acceptance of responsibility shall be determined by the Court in its discretion.

e. Total Offense Level.
With the application of U.S.S.G. § 3A1.4, the adjusted offense level is 38, minus 3 points for acceptance of responsibility, if applicable, for a total offense level of 35.

The Court will make the final determination of the total offense level.

f. Criminal History Category.
The parties believe that because U.S.S.G. § 3A1.4 enhancement applies, the defendant has a criminal history category of VI.

g. Guidelines Range. The parties agree that if the adjusted offense level is 35, and the defendant's criminal history category is VI, then the Guidelines range is 292-365 months. However, because 18 U.S.C. § 2339B carries a statutory maximum sentence of 15 years (180 months), the parties agree that the defendant's guidelines range is 180 months' imprisonment.

h. Fine Range.
The parties agree that if the total offense level is 35, the fine range is $20,000 to $200,000. U.S.S.G. § 5E1.2. There is no agreement as to the imposition of a fine or, if one is imposed, the amount of any such fine.

i. Supervised Release.
The parties agree that the Sentencing Guidelines specify that, if a term of supervised release is ordered, the term of supervised release is 2 years to life. U.S.S.G. §§ 5D1.2(a)(2) and 5D1.2(b)(1).

j. Departures:
The parties agree that the defense reserves its right to argue on any grounds for a downward departure or variance from the ultimate guideline determination in this case.

k. Further Offense Characteristics:
The parties agree that the facts of this case support no other specific offense characteristics or chapter three adjustments.

7.  **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determinations regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this Agreement and the defendant will be sentenced pursuant to the Court's determinations.

8.  **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. In this case, the defendant stands convicted of one count and is required to pay $100.

9.  **Forfeiture**. The government reserves its right to proceed against any of the defendant's assets if said assets represent real or personal property involved in violations of the laws of the United States or are proceeds traceable to such property.

10. **Immigration Consequences**. The defendant recognizes that pleading guilty may have consequences with respect to his immigration status, including removal or deportation, if he is not a citizen of the United States. The defendant understands that no one, including his attorney, the Assistant U.S. Attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Regardless of any immigration consequences that may follow from his guilty plea, including the possibility

6

of mandatory removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

11. **Complete Agreement.** The foregoing sets forth the full extent of the Plea Agreement and Sentencing Stipulations in the above-captioned case.

Dated: February 11, 2016

        ANDREW M. LUGER
        United States Attorney

        BY: ANDREW R. WINTER
        Assistant U.S. Attorney

        BY: JOHN DOCHERTY
        Assistant U.S. Attorney

Dated: February 11, 2016

        ABDIRIZAK MOHAMED WARSAME
        Defendant

Dated: February 11, 2016

        ROBERT SICOLI, Esq.
        Attorney for Defendant

7